Pierre BOSTIC, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 05–CV–41.

District of Columbia Court of Appeals.

Argued April 26, 2006.

Decided Aug. 31, 2006.

Robert D. Scott, for appellant.

Mary L. Wilson, Senior Assistant Attorney General for the District of Columbia, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Edward E. Schwab, Deputy Attorney General for the District of Columbia, were on the brief, for appellee.

Kenneth L. Wainstein, United States Attorney, and Roy W. McLeese III, Assistant United States Attorney, are on the brief, for amicus curiae the United States.

Before RUIZ and FISHER, Associate Judges, and NEBEKER, Senior Judge.

RUIZ, Associate Judge:

Pierre Bostic appeals the dismissal, with prejudice, of his complaint against the District of Columbia, which alleged that a uniformed officer of the United States Capitol Police committed tortious acts when he arrested appellant. He also claims that the trial court prematurely granted appellee's motion to dismiss without first ruling on his motion to join the United States Capitol Police as a defendant. We affirm.

## I.

Appellant's complaint alleged that on February 14, 2004, he was falsely arrested, falsely imprisoned, assaulted, battered, and the subject of intentional infliction of emotional distress when United States Capitol Police Officer Darryl Banks pulled him over "at or near" the intersection of South Capitol and I Streets, S.W., and arrested him for operating a vehicle with a suspended license.

Appellant filed a complaint in Superior Court against the District of Columbia, alleging it was the "employer" of Capitol Police Officer Banks, and responsible for his hiring, training, and supervision, and therefore, liable for all actions performed by him in his official capacity. The District filed a motion to dismiss the complaint pursuant to Superior Court Civil Rule 12(b)(6), stating that the "United States Capitol Police is under the control of the United States Capitol Police Board, Officer Banks is not a D.C. employee, and, as such, the District is not the proper party defendant. Plaintiff has not alleged

any acts or omissions by an employee or agent of the District...." Appellant opposed the motion, arguing that the statute authorizing "cooperative agreements" between the Metropolitan Police Department (MPD) and federal agencies, such as the U.S. Capitol Police, evidenced an agency relationship between the two. *See* D.C.Code § 5–301 (2001). Appellant also filed a motion to join the U.S. Capitol Police as a party defendant pursuant to Superior Court Civil Rule 19(a). The trial court dismissed appellant's complaint, with prejudice, without ruling on the motion to add the U.S. Capitol Police as a defendant.

## II.

Appellant relies primarily on provisions of the D.C.Code governing the allocation of duties and responsibilities of federal law enforcement officers working for agencies that have entered "cooperative agreements" with the MPD to assist in carrying out crime prevention and law enforcement activities in the District. *See* D.C.Code §§ 5–133.17(a),[1] –301(a) (2001).[2] Accord-

---

**1.** Cooperative agreements between federal agencies and Metropolitan Police Department:

(a) Agreements. Each covered Federal law enforcement agency may enter into a cooperative agreement with the Metropolitan Police Department of the District of Columbia to assist the Department in carrying out crime prevention and law enforcement activities in the District of Columbia, including taking appropriate action to enforce subsection (e) of this section [currently recodified at D.C.Code § 22–1323] (except that nothing in such an agreement may be construed to grant authority to the United States to prosecute violations of subsection (e) of this section).

(b) Contents of agreement. An agreement entered into between a covered Federal law enforcement agency and the Metropolitan Police Department pursuant to this section may include agreements relating to:

(1) Sending personnel of the agency on patrol in areas of the District of Columbia which immediately surround the area of the agency's jurisdiction, and granting personnel of the agency the power to arrest in such areas;

(2) Sharing and donating equipment and supplies with the Metropolitan Police Department;

(3) Operating on shared radio frequencies with the Metropolitan Police Department;

(4) Permitting personnel of the agency to carry out processing and papering of suspects they arrest in the District of Columbia; and

(5) Such other items as the agency and the Metropolitan Police Department may agree to include in the agreement.

(c) Coordination with U.S. Attorney's Office.—Agreements entered into pursuant to this section shall be coordinated in advance with the United States Attorney for the District of Columbia.

(d) Covered federal law enforcement agencies described. In this section, the

ing to appellant, these statutes establish that the District of Columbia may be held liable for the acts of the U.S. Capitol Police, since the statutes convey the same legal status of the Metropolitan Police on the U.S. Capitol Police, when they are enforcing non-federal District of Columbia offenses. As in the trial court, appellant cites for this proposition the portion of D.C.Code § 5–301 that states that federal officers acting pursuant to a cooperative agreement with the District will have "the same legal status and immunity from suit as an MPD officer...." D.C.Code § 5–301(a) (2001).

Appellant never produced a cooperative agreement between the MPD and the U.S. Capitol Police, and at oral argument neither party could confirm its existence. We, *sua sponte*, ordered further briefing on the matter, inviting the United States to file, as *amicus curiae*, its position on the existence of a cooperative agreement between the MPD and the U.S. Capitol Police. The United States confirmed, and neither party disputes, that, in fact, there is no cooperative agreement between the MPD and the U.S. Capitol Police. Therefore, appellant cannot rely, as he now concedes, on the cited provisions of the D.C.Code—which govern only federal officers acting pursuant to such cooperative

agreements—to support his theory that the District is liable for the actions of Capitol Police Officers. We, therefore, leave for another day the interpretation and implication for the District's liability of the language in D.C.Code § 5–301(a) granting federal police officers acting pursuant to a cooperative agreement with the MPD "the same legal status and immunity from suit as an MPD officer."

■ Appellant nonetheless argues that his case is not doomed because an agency relationship between the MPD (and therefore the District) and the Capitol Police exists as a factual matter, despite the lack of a statutorily-authorized cooperative agreement between the two. He asserts that the District gives its "tacit consent" to the U.S. Capitol Police to act on the District's behalf and to its benefit, creating a principal-agent relationship that renders the District liable for torts committed by the officers of the U.S. Capitol Police while performing duties pursuant to this relationship. Appellant's argument is not supported by the allegations in his complaint.

The facts alleged do not provide a basis for an agency relationship between the District of Columbia and U.S. Capitol Police Officers, because the authority of the

term "covered federal law enforcement agency" means any of the following:
(1) United States Capitol Police....
D.C.Code § 5–133.17(a) (2001).

**2.** Powers and duties of federal law enforcement officers when making arrests for non-federal offenses:
(a) When a federal law enforcement agency has entered into a cooperative agreement with the Metropolitan Police Department of the District of Columbia ("MPD") to assist the Department in carrying out crime prevention and law enforcement activities pursuant to § 5–133.17, a sworn federal law enforcement officer of a covered federal law enforcement agency as defined in § 5–133.17(d) ("federal officer"), who in his of-

ficial capacity is authorized to make arrests, shall, when making an arrest in the District of Columbia for a nonfederal offense, have the same legal status and immunity from suit as an MPD officer if the arrest is made under the following circumstances:
(1) The federal officer has probable cause to believe that the person arrested has committed a felony;
(2) The federal officer reasonably believes that the person arrested has committed a misdemeanor in his presence; or
(3) The federal officer is rendering assistance to an MPD officer in an emergency at the request of that MPD officer.
D.C.Code § 5–301(a) (2001).

U.S. Capitol Police to operate within the District of Columbia as it did in this case derives not from the District of Columbia, but from the United States Congress. The U.S. Capitol Police is a creation of the United States Congress: its officers are jointly selected by the House of Representatives and the Senate, *see* 2 U.S.C. § 1901 (2003); its officers and employees are paid by the United States and its administrative structure was delineated by Congress, including its compensation schemes, *see* 2 U.S.C. § 1903; even its officers' uniforms and firearms are governed by provisions of the U.S. Code, *see* 2 U.S.C. §§ 1941–1944. Most important for purposes of this appeal, its authority to "police the United States Capitol Buildings and Grounds, . . . to make arrests within the United States Capitol Buildings and Grounds for any violations of any law of the United States, of the District of Columbia, or of any State, or any regulation promulgated pursuant thereto," was granted by the United States Congress. 2 U.S.C. § 1961(a). Among its other powers and duties, Congress granted to the Capitol Police

> [the] authority to make arrests and otherwise enforce the laws of the United States, including the laws of the District of Columbia . . . within the area . . . bounded by the north curb of H Street from 3rd Street, N.W. to 7th Street, N.E., the east curb of 7th Street from H Street, N.E., to M Street, S.E., the south curb of M Street from 7th Street, S.E. to 1st Street, S.E., the east curb of 1st Street from M Street, S.E. to Potomac Avenue S.E., the southeast curb of Potomac Avenue from 1st Street, S.E. to South Capitol Street, S.W., the west curb of South Capitol Street from Potomac Avenue, S.W. to P Street, S.W., the north curb of P Street from South Capitol Street, S.W. to 3rd Street, S.W., and the west curb of 3rd Street from P Street, S.W. to H Street, N.W.

2 U.S.C. § 1967(a)(4), (b)(1). Because, according to appellant's complaint, he was arrested by a Capitol Police Officer "at or near" the intersection of I Street, S.W. and South Capitol Street, S.W., which is at least six blocks north and three blocks east of the southern and western boundaries of the jurisdiction accorded to the Capitol Police by statute, the officer who arrested appellant was acting within the authority granted to him, as a member of the Capitol Police, by the United States Congress, and not pursuant to any authority derived from the District of Columbia.

 In any event, the District of Columbia may be sued only for the torts of its agent police officers if there exists a *respondeat superior* relationship between the officers and the District. *See, e.g., Wade v. District of Columbia,* 310 A.2d 857, 863 (D.C.1973). To establish this agency relationship, "appellant must show that a master-servant relationship existed between [the alleged tortfeasor] and the District, and that the incident at issue occurred while [the tortfeasor] was acting within the scope of his employment." *Moorehead v. District of Columbia,* 747 A.2d 138, 142 (D.C.2000) (quoting *Giles v. Shell Oil Corp.,* 487 A.2d 610, 611 (D.C. 1985)). This master-servant relationship is established by evaluating the following factors: "(1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the regular business of the employer." *Id.* at 143 (citing *District of Columbia v. Hampton,* 666 A.2d 30, 38 (D.C.1995) (quoting *LeGrand v. Insurance Co. of North America,* 241 A.2d 734, 735 (D.C.1968))). Appellant alleged in his complaint that the "District of Columbia is and was at all times herein relevant to this complaint, the employer of and responsible for the hiring, training and

supervision of, retaining in its employ and continued employment of police officers of the ... U.S. Capitol Police Department." Although we normally accept as true all facts alleged in a complaint when reviewing the grant of a motion to dismiss, *see, e.g., Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 62 (D.C.2005), we may take judicial notice of laws, statutes, and other matters of public record. *See In re Estate of Barfield*, 736 A.2d 991, 995 n. 8 (D.C.1999); *Gaither v. District of Columbia*, 333 A.2d 57, 59–60 (D.C.1975) (noting that "[s]uch a rule is self-evident under our system of jurisprudence. Indeed, to require a litigant in the Superior Court to prove statutes enacted by Congress for the District of Columbia would be absurd .... appellant was not required to prove that the District of Columbia owned and operated [D.C.'s Lorton prison complex] since such a fact should have been judicially noticed on the basis of common knowledge or statutory enactment."). We thus take judicial notice that U.S. Capitol Police Officers are employees of the United States and not the District of Columbia.[3] As it is the United States, not the District of Columbia, that is responsible for their selection, engagement, payment, control, and discharge, *see* 2 U.S.C. § 1901, *et seq.*, the District of Columbia does not have any of the control over the activities of Capitol Police Officers necessary to establish a *respondeat superior* relationship pursuant to which it might be liable for their actions.

Appellant's complaint against the District of Columbia for the alleged torts of a U.S. Capitol Police Officer was, therefore, properly dismissed.

■ Appellant's final claim is that the trial court prematurely granted appellee's motion to dismiss without ruling on its motion to join the U.S. Capitol Police as a party defendant.[4] Assuming that the suit against the District should not have been dismissed before the trial court ruled on the motion to add the U.S. Capitol Police as a defendant (because dismissal left no suit for the Capitol Police to join), any procedural misstep was harmless. Appellant could not have sued the Capitol Police, an agency of the United States, in D.C. Superior Court; the Federal Tort Claims Act requires that all tort actions against the United States be brought in the federal courts. *See* 28 U.S.C. § 1346(b)(1) (2001) (providing that "the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment ..."), *discussed in Goddard v. District of Columbia Redevelopment Land Agency*, 109 U.S.App.D.C. 304, 287 F.2d 343, 345–46 (1961). If appellant wishes to sue the U.S. Capitol Police, he should do so in federal court.[5]

3. Indeed, appellant seems to have recognized this by the time he filed his supplemental brief, wherein he argues a more generalized theory of agency between Capitol Police Officers and the District (stating that the District gives the Capitol Police its "tacit consent" to act on its behalf in the District), instead of an employee-employer or *respondeat superior* relationship. As discussed in the text, this claim also fails because the U.S. Capitol Po-

lice officer was acting within the scope of the authority granted by Congress.

4. This claim, arguably, has been waived because appellant did not preserve his objection in the trial court. *See Thorne v. United States*, 582 A.2d 964, 965 (D.C.1990) ("A party who neglects to seek a ruling on his motion fails to preserve the issue for appeal.").

5. Appellant noted at oral argument and in his supplemental brief that he is undertaking pre-

## III.

For all of the foregoing reasons, the trial court's dismissal of appellant's complaint against the District of Columbia is hereby

*Affirmed.*

liminary steps to perfect a Federal Tort Claims Act claim against the U.S. Capitol Police.