2009 VT 78

**Kenneth G. KAPLAN, Nancy Kaplan, Christopher McHugh, Steven Stewart and Edwin Webster v. MORGAN STANLEY & COMPANY, INC., Rebecca Graddock and Town of Stowe**

[987 A.2d 258]

No. 08-099

¶ 1. July 28, 2009. Plaintiffs are employees of the Town of Stowe Police Department who decided to convert from a defined-benefit to a defined-contribution retirement plan in September 1997. Nearly ten years later, plaintiffs filed this lawsuit against Morgan Stanley & Company, Inc., the company that handled investments for the new retirement plan, its local representative, Rebecca Graddock,

and the Town, alleging that plaintiffs lost substantial retirement benefits as a result of defendants' fraudulent omissions and misrepresentations concerning the plan's nature and performance. The trial court dismissed the complaint as untimely, and plaintiffs appealed, contending that the court erred in: (1) ruling that the cause of action accrued in December 1997, when plaintiffs received materials summarizing the elements of the new plan; and (2) rejecting their assertions of equitable tolling and equitable estoppel. We affirm.[1]

¶ 2. The facts as alleged in the complaint may be summarized as follows. Plaintiffs had participated in the Town's defined-benefit retirement plan for municipal employees, called VMERS-C, for periods ranging from eight to twenty-six years. As described in their complaint, the VMERS-C plan guaranteed plaintiffs a lifetime retirement pension based on years of service, up to a maximum of fifty percent of the average of their highest three consecutive years of compensation. Under the plan, plaintiffs with twenty years of service were entitled to retire at the fifty-percent rate at the age of fifty-five. The plan included an automatic cost-of-living adjustment, an optional death benefit for the retiree's spouse, and an in-service death benefit.

¶ 3. In September 1997, the Town offered plaintiffs and other Town employees the voluntary option to switch from VMERS-C to a defined-contribution plan

---

[1] The Town, Morgan Stanley, and Rebecca Graddock raised additional grounds for dismissal, but the trial court did not reach those grounds. Defendants urge us, nonetheless, to reach the additional grounds. Similarly, plaintiffs urge us to decide whether the rationale for dismissal of an earlier law suit — that is, that defendants made only nonactionable predictions — was proper. In light of our disposition, we reach none of these additional issues.

which later came to be known as the Town Plan. Defined-contribution plans typically provide an individual investment account for each participant, and benefits are based, in part, on the amount contributed and investment gains and losses. Unlike defined-benefit plans, therefore, benefits are not guaranteed but will vary based on investment performance. In addition, a defined-contribution plan generally requires a significantly higher rate of funding to accumulate account balances comparable in annuity value to a guaranteed benefit payable at age fifty-five. Cost-of-living adjustments are generally not standard under defined-contribution plans, as they are with defined-benefit plans, and death benefits also differ.

¶ 4. In September 1997, plaintiffs met individually with a representative of Morgan Stanley, defendant Rebecca Graddock, to discuss their retirement plan options. Plaintiffs allege that Ms. Graddock concealed critical information and made misrepresentations at those meetings. Specifically, plaintiffs allege that Ms. Graddock concealed that VMERS-C guaranteed specific benefits irrespective of the investment performance of its assets and the Town Plan did not, so that investment losses would reduce benefits. Plaintiffs allege that Ms. Craddock made misrepresentations that certain plaintiffs could comfortably retire at a specific age under the Town Plan; that the rate of return on assets in the Town Plan would be double or more the rate for assets in VMERS-C; that certain plaintiffs would have retirement income from the Town Plan that exceeded fifty percent of their income at retirement; that one of the plaintiffs would never have to touch the principal in the Town Plan because earnings would exceed $35,000 per year; that there was no death benefit under VMERS-C, but there was under the Town Plan; and that, on death, the money in VMERS-C was lost, but all the money put into the Town Plan was still

available. Based on the information provided by Ms. Graddock, the plaintiffs decided at that time to leave VMERS-C and join the Town Plan. A few months later, in December 1997, plaintiffs received a Summary Plan Description (SPD) describing the new Town Plan. Several years later, in July 2001, plaintiff Christopher McHugh, a Town police officer, began to research the differences between the Town Plan and VMERS-C. In the first half of 2002, officer McHugh discovered for the first time the key differences between the two plans and reported these to the other plaintiffs. Plaintiffs were unaware of the differences before this time.

¶ 5. Shortly thereafter, in July 2002, the Town signed a labor contract with the Stowe Police Officers' Association that included a new defined-benefit retirement plan, VMERS-D. The new plan offered several advantages, including a retirement option at age fifty with full benefits and more generous death benefits. Upon inquiring about joining the plan, however, plaintiffs learned that switching from the Town Plan would cause them to lose years of service. Plaintiffs eventually joined VMERS-D, or rejoined VMERS-C, and were able to "buy back" some — but not all — of their years of service, with the result that they will have to work longer to obtain the maximum retirement benefit, resulting in significant monetary losses.

¶ 6. Plaintiffs filed the instant lawsuit in July 2007, alleging that, in failing to disclose certain key differences between the defined benefit and the Town Plan, and in making misrepresentations, defendants breached fiduciary duties, committed fraud, committed negligent misrepresentation and violated the Consumer Fraud Act. Defendants moved to dismiss the complaint based, in part, on the six-year statute of limitations applicable to civil actions. 12 V.S.A. § 511. Following additional briefing, the court granted the mo-

tion, ruling that "the facts asserted in the Complaint . . . indicate that the Plaintiffs reasonably should have discovered the differences . . . in the various plans by December 1997" when they received the SPD. Although the SPD did not identify specific investment risks and rates of return, the court ruled that the SPD conveyed information sufficient to lead a reasonable person to conduct further inquiry and put them on notice of potential economic injury. Plaintiffs have appealed from the order of dismissal.

¶ 7. The standards governing a Vermont Rule of Civil Procedure 12(b)(6) motion to dismiss are well settled. A motion for failure to state a claim may "not be granted unless it is beyond doubt 'that there exist no facts or circumstances that would entitle the plaintiff to relief.' " *Bethel v. Mount Anthony Union High Sch. Dist.*, 173 Vt. 633, 634, 795 A.2d 1215, 1217 (2002) (mem.) (quoting *Amiot v. Ames*, 166 Vt. 288, 291, 693 A.2d 675, 677 (1997)). In reviewing the disposition of such a motion, "this Court assumes that all well pleaded factual allegations in the complaint are true, as well as all reasonable inferences that may be derived therefrom." *Id.* The question on review is whether the bare allegations of the complaint are sufficient to state a claim, and "[s]ince averments of time and place are material for testing the sufficiency of a complaint, defenses based on a failure to comply with the applicable statute of limitations are properly raised in a motion to dismiss." *Id.*; accord *Fortier v. Byrnes*, 165 Vt. 189, 193, 678 A.2d 890, 892 (1996) (holding that, consistent with federal authority interpreting the identical federal rule, the "defendant could properly raise the limitations defense in a motion to dismiss"). There is no dispute here that plaintiffs' claims are subject to the standard six-year statute of limitations applicable to civil actions. 12 V.S.A. § 511. Nor is there any dispute concerning the general principles governing accrual of ac-

tions under that section. As we have explained:

> [A] cause of action is generally said to accrue upon the discovery of facts constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery. Thus, the statute of limitation begins to run when the plaintiff has notice of information that would put a reasonable person on inquiry, and the plaintiff is ultimately chargeable with notice of all the facts that could have been obtained by the exercise of reasonable diligence in prosecuting the inquiry.

*Agency of Natural Res. v. Towns*, 168 Vt. 449, 452, 724 A.2d 1022, 1024 (1998) (quotations and citations omitted). Thus, the question before us is whether plaintiffs were on inquiry notice of the true facts about the Town Plan, and its comparison to VMERS-C, by July of 2001.

¶ 8. Just as there is no dispute over the applicable legal principles, there is also no dispute over the critical fact that plaintiffs received a copy of the SPD in December 1997. It was this event, as noted, which the trial court found to have triggered the statute of limitations and rendered plaintiffs' complaint — filed several years after expiration of the six-year period — untimely. Although plaintiffs challenge this conclusion, we find the trial court's reasoning to be essentially sound. Federal law routinely requires SPDs of the kind issued in this case by the Town in its capacity as the retirement plan administrator under the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461. See 29 U.S.C. § 1022(a) (company must furnish its employees with summary plan description of any

employee benefit plan).[2] As courts have noted, "the statute contemplates that the summary will be an employee's *primary source of information* regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907 (2d Cir. 1990) (emphasis added); accord *Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130, 135-36 (2d Cir. 1999) (employers are bound by SPDs, "which Congress intended to be a primary source of information regarding plan benefits"); *Bilello v. JPMorgan Chase Retirement Plan*, 607 F. Supp. 2d 586, 593 (S.D.N.Y. 2009) ("The SPD plays a central role in communicating a plan's terms to participants, and often serves as an employee's primary source of information regarding employment benefits.") (quotations omitted); see generally 29 U.S.C. § 1022(a) (summary plan description "shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan").

¶ 9. As one court has observed, however, "[t]he SPD's important role in disclosure goes both ways: just as employees may rely on the terms of the plan as described in the SPD, so may a clear description in the SPD *put them on notice* of that plan's terms." *Bilello*, 607 F. Supp. 2d at 593 (emphasis added). Consistent with the trial court's conclusion here, courts have thus held that claims predicated upon provisions in an employee retirement plan may accrue — and trigger the statute of limitations — upon receipt of an SPD. See *id.* at 596-97 (holding that claims arising from employer's conversion from defined benefit to "cash balance" retirement plan "accrue[d] with the distribution of the SPDs" and were barred by the expiration of the six-year statute of limitation "since the plaintiff was on clear notice through SPDs" issued more than six years before the suit); *Hirt v. Equitable Retirement Plan for Employees, Managers & Agents*, 285 F. App'x 802, 804 (2d Cir. 2008) (affirming district court judgment that employees' action arising out of employer's conversion from defined-benefit to cash-balance retirement plan accrued when SPDs were distributed to participants in December 1992, and that 2001 claims were therefore barred under the six-year statute of limitations).

¶ 10. The trial court here correctly concluded that the facts underlying plaintiffs' claims of alleged omissions and misrepresentations concerning the Town Plan itself, or differences between the Town Plan and the defined-benefit plan, were all reasonably discoverable through examination of the twenty-five page retirement-plan summary set forth in the SPD, or through further inquiry based thereon.[3] The SPD sets forth basic information about the nature and amount of

---

[2] The parties agree that the ERISA requirement of an SPD did not apply in this instance. That circumstance is not relevant to our determination because we are not considering compliance with ERISA, but rather whether plaintiffs had the information to put them on inquiry notice that defendants had misrepresented the Town Plan and its comparison to VMERS-C.

[3] The parties skirmished about whether a statement in the SPD that a full copy of the Town Plan was available from the employer demonstrated that plaintiffs had access to all relevant information when they received the SPD. We view the disputed question as irrelevant. There is no allegation that defendants did not make available the relevant information when plaintiffs specifically inquired. Plaintiffs allege that they learned some of the relevant information when plaintiff McHugh contacted the Town Plan administrator and learned the rest through investigation.

employer and employee contributions, the accrual and distribution of retirement benefits, and vesting and years of service rules, among other provisions, and was sufficient to explain, or put plaintiffs on inquiry notice concerning, the fundamental nature of the Town Plan, its differences with the defined-benefit plan, and the inherent economic risks of conversion. For example, the SPD says "[w]hen you retire, you will be eligible to receive the value of the amounts which have accumulated in your account." It further states that contributions "will be held and invested by the trustee of your plan." Under benefits, it specifies that the employee will be entitled to 100% of the account balance on retirement. Nowhere does it say that the employee will receive a certain percentage of wages on retirement or that the account will be equal to a certain amount. Certainly, this summary put plaintiffs on inquiry notice that no amount of invested funds, or income stream from the invested funds, was guaranteed at any retirement date. Plaintiffs were also longstanding members of the Town's defined-benefit plan and clearly privy to its basic provisions, or could have discovered the same simply by consulting the rules governing the Municipal Employees' Retirement System under 24 V.S.A. §§ 5051-5070. Thus, we find no error in the trial court's conclusion that plaintiffs' claims accrued upon receipt of the SPD in December 1997, and were therefore untimely when the complaint was filed in July 2007, more than nine years later.[4]

---

[4] Plaintiffs have not specifically challenged the trial court's reliance on the SPD which defendants attached to their motion to dismiss. Although the full text of the SPD is not reproduced in, or attached to, plaintiffs' complaint, it is specifically referred to therein. Therefore, it was properly considered by the trial court without the necessity of converting the motion to one for summary judgment. As many courts have observed, the general rule is that "[w]hen the complaint relies upon a document . . . such a document merges into the pleadings and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (quotation omitted); accord *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 13 n.3 (2d Cir. 2001) (holding that it was "appropriate for the district court to refer to the documents attached to the motion to dismiss since the documents were referred to in the complaint"); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (court may consider materials "referred to in the plaintiff's complaint and . . . central to her claim" in ruling on motion to dismiss) (quotation omitted); *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir. 1994) (court did not err in considering document referred to in complaint in granting motion to dismiss). Similarly, it is well settled that, in ruling on a Rule 12(b)(6) motion to dismiss, courts may properly consider matters subject to judicial notice, such as statutes and regulations, and matters of public record. See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (in ruling on a motion to dismiss, "courts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Bostic v. Dist. of Columbia*, 906 A.2d 327, 332 (D.C. Ct. App. 2006) ("Although we normally accept as true all facts alleged in a complaint when reviewing the grant of a motion to dismiss, we may take judicial notice of law, statutes, and other matters of public record.") (citation omitted); 5B C. Wright & A. Miller, Federal Practice & Procedure § 1357, at 376 (2004) (in determining whether to grant a 12(b)(6) mo-

¶ 11. Plaintiffs further assert that their claims should be allowed to proceed, notwithstanding the statute of limitations, based on the doctrines of "equitable estoppel" and "equitable tolling." Equitable tolling applies either where the defendant is shown to have actively misled or prevented the plaintiff in some extraordinary way from discovering the facts essential to the filing of a timely lawsuit, or where the plaintiff has timely raised the same claim in the wrong forum. *Beecher v. Stratton Corp.*, 170 Vt. 137, 142-43, 743 A.2d 1093, 1098 (1999). While plaintiffs' complaint alleged that defendants misrepresented or omitted facts relating to the Town Plan, it did not allege — as the trial court explained — that defendants "prevented them in any way from examining investment plan documents for either the [defined benefit] plan or the Town Plan" or otherwise actively prevented them from discovering the facts essential to their suit. Accordingly, we find no basis for an assertion of equitable tolling.

¶ 12. Equitable estoppel generally requires a showing that a defendant's conduct in some way induced the plaintiff to delay bringing suit, or "lull[ed] him into inaction." *Id.* at 140, 743 A.2d at 1096; see *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 49-50 (2d Cir. 1985) ("Unlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment, equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit."). Again, nothing in the alle-

tion, "[t]he court is not limited to the four corners of the complaint," but may consider "items subject to judicial notice, [and] matters of public record" without converting the motion into one for summary judgment).

gations of the complaint indicate that defendants engaged in any conduct, or made any promises, that induced plaintiffs to refrain from filing a timely complaint. Accordingly, we find no grounds for the assertion of equitable estoppel.

¶ 13. Finally, we emphasize that this is a decision about the timeliness of the suit and not about whether plaintiffs alleged any causes of action. No matter how egregious were defendants' misrepresentations, if any, plaintiffs cannot ignore information that shows that the alleged representations were incomplete or inaccurate based on the general assertion that they relied upon the representations. Under that theory, we would have no effective statute of limitations in fraud cases.

*Affirmed.*

Motion for reargument denied September 8, 2009.