Vermont Superior Court
Filed 01/09/25
Rutland Unit

VERMONT SUPERIOR COURT
Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-03884

---

Brickhouse Investments LLC v. Level 7 LLC et al

---

## RULING ON PENDING MOTIONS
### (Motions 6 & 13)

On November 22, 2023, Defendants Michael Russell and Pease Mountain Law, PLLC ("Pease") moved to dismiss Counts I and II of the Amended Complaint filed by Plaintiff Brickhouse Investments, LLC ("Brickhouse"). On July 26, 2024, Brickhouse filed a motion for leave to amend its Amended Complaint. For reasons that follow, Defendants' motion is granted in part and denied in part, and Brickhouse's motion is denied.

I.   <u>Motion to Dismiss for Failure to State a Claim</u>

A.  <u>Standard of Review</u>

Defendants move for dismissal under Rule 12(b)(6) of the Vermont Rules of Civil Procedure, arguing that Counts I and II each fail to state a viable claim for relief as a matter of law. The standards governing such a motion are well settled: "A motion for failure to state a claim may not be granted unless it is beyond doubt that there exist no facts or circumstances that would entitle plaintiff to relief." *Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 7, 186 Vt. 605 (mem.) (omitting internal quotation marks). In disposing of such a motion, the Court "assumes that all well pleaded factual allegations in the complaint are true, as well as all reasonable inferences that may be derived therefrom." *Id.* (omitting internal quotation marks). Additionally, "when the complaint relies upon a document such document merges into the pleadings and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." *Id.* ¶ 10 n.4 (omitting alterations and internal quotation marks).

B.  <u>Count I: "Injunctive Relief"</u>

Defendants argue that Brickhouse has failed to state claim in Count I and Count II of the Amended Complaint. Count I is styled as a standalone claim for "injunctive relief," against "all defendants." This claim must be dismissed because "injunctive relief" is not an independent claim or cause of action, but merely a remedy that may be sought when a separate, substantive legal claim is brought. *See La. Crisis Assistance Ctr. v. Marzano-Lesnevich*, 878 F. Supp. 2d 662, 669 (E.D. La. 2012) (citing numerous cases); *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 688 (S.D.N.Y. 2021) (citing *KM Enters., Inc. v. McDonald*, 2012 WL 4472010, at *20 (E.D.N.Y. Sept. 25, 2012), *aff'd* 518 F. App'x 12 (2d Cir. 2013)); *see also Davis v. Passman*, 442 U.S. 228, 239 (1979) ("whether a litigant has a 'cause of action' is

analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive"). Brickhouse asserts that Count I is brought "pursuant to Vt. R. Civ. P. 65," but our Civil Rules, including Rule 65, merely "govern the procedure . . . in all suits of a civil nature." V.R.C.P. 1. Thus, Rule 65 determines the procedures that govern requests for injunctive relief in civil actions; it is not itself the source or authority for any substantive legal right, cause of action, or claim for relief. *See* 12 V.S.A. § 1 ("The rules . . . shall not abridge, enlarge, or modify any substantive rights of any person provided by law."). To be clear, dismissal of Count I is only because "injunctive relief" is not cognizable as a standalone cause of action; this dismissal has no bearing on whether injunctive relief might be an appropriate remedy in this case, if Brickhouse shows (among other things) a likelihood or actuality of success on the merits of an independent, substantive claim.

### C. Count II: Tortious Interference with Business Relationships

Count II alleges that Mr. Russell, and the law firm of which he is a member (Pease), are liable for tortious interference with business relationships. This tort is recognized in Vermont, with our Supreme Court principally relying on the *Restatement (Second) of Torts* §§ 766-767, for guidance as to its scope and applicability. *See Beldock v. VWSD, LLC*, 2023 VT 35, ¶ 62, 218 Vt. 144; *Williams v. Chittenden Trust Co.*, 145 Vt. 76, 80-81 (1984); *Gifford v. Sun Data, Inc.*, 165 Vt. 611, 612 (1996) (mem.); *see also Mitchell v. Aldrich*, 122 Vt. 19, 22-24 (1960) (relying on *Restatement of Torts* §§ 766-67). Thus, in Vermont,

> [o]ne who intentionally and *improperly* interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Restatement (Second) of Torts* § 766 (emphasis added). Here, Brickhouse's Amended Complaint, including documents attached to and relied upon in the Amended Complaint, contain the following set of pertinent factual allegations:

In July of 2022, Peggy Keyes, on behalf of Defendant Level 7, LLC, entered into a purchase and sales agreement with Brickhouse regarding certain real estate owned by Level 7 on Route 30 in Castleton, Vermont. Brickhouse's principal, Janet Currie, had informed Ms. Keyes that Brickhouse intended to use the property to operate an integrated cannabis business. The agreement called for Level 7 to finance the purchase. Under the agreement, at closing Brickhouse would receive a warranty deed from Level 7; Brickhouse would give a mortgage deed to Level 7; and Brickhouse would promise to make eight quarterly payments to Level 7, each for $12,500, as well as a final balloon payment of $275,000. The closing occurred on September 1, 2022. Mr. Russell represented Level 7 at the closing, though he had earlier contacted Ms. Currie to express dissatisfaction with the deal struck by Ms. Keyes on behalf of Level 7. Indeed, prior to closing, Mr. Russell "bullied and harassed Ms. Currie, claiming that she had taken advantage of Ms. Keyes, and that he would make Ms. Currie pay." (Am. Compl. ¶ 10.)

In December of 2022, Brickhouse made the first quarterly payment that was due. The next payment was due in March of 2023, but Brickhouse contacted Ms. Keyes in late February of 2023, to inform her that Brickhouse had encountered regulatory difficulties with opening its business and that its March payment would be late. Brickhouse also requested a restructuring of the mortgage payment

schedule, to which Ms. Keyes (on behalf of Level 7) replied by stating that Level 7 would agree to accept payment when Brickhouse was "able to make it," and would also modify and extend the remaining payment schedule. (Am. Compl. ¶ 13.) However, Ms. Keyes died on March 9, 2023, before any written modifications to the mortgage payment schedule were made. Mr. Russell, acting on behalf Level 7, then made a demand on Brickhouse to cure the late payment. Brickhouse thereafter made the late payment, and it was accepted by Level 7 on or about April 24, 2023.

On June 20, 2023, Mr. Russell, on behalf Level 7, sent Brickhouse a written "Demand and Notice of Intent to Sell" that essentially tracked the form language set forth in 12 V.S.A. § 4962(c)(1), pertaining to a mortgagee's notice of intention to foreclose by non-judicial sale. The letter stated that Brickhouse, by failing to make timely mortgage payments, had defaulted under a promissory note given by Brickhouse to Level 7 at closing, and also breached the terms of the mortgage deed.[1] The letter stated that Level 7 was accelerating the maturity of all indebtedness due, and that to cure the default, Brickhouse would need to pay $326,711.25, plus accruing interest, by July 21, 2023.

On July 24, 2023, Mr. Russell and Pease filed a notice of sale with the Town Clerk of Castleton, indicating that the property would be sold at a non-judicial foreclosure sale on September 22, 2023. Shortly before the date of sale, Mr. Russell and Pease then filed a notice of adjournment of sale, indicating the sale would instead occur on November 10, 2023. On September 25, 2023, Mr. Russell and Pease sent a notice to tenants of Brickhouse, who had been residing on the subject property, informing them that Level 7 had acquired ownership of the property through a non-judicial foreclosure sale that took place September 22, 2023, and that any rents that were ordinarily payable to Brickhouse should instead be sent to Level 7. At some point in September or October of 2023, Level 7 changed the locks to the subject property, depriving Brickhouse with access to the property.

Brickhouse alleges that Pease and Russell are liable for intentional, tortious interference with business relations because they

> purported to commence a non-judicial foreclosure process that they knew was impermissible as a matter of law, fraudulently advis[ed] Brickhouse's tenants that Level 7 had acquired the property at a foreclosure sale, even though the sale had never occurred, t[ook] steps to deny Brickhouse access to its own property and seize rents from its tenants, and attempt[ed] to rent the property to new tenants.

Am. Compl. ¶ 30. Relatedly, Brickhouse alleges that "Russell was angry that his client, Level 7, had sold the property to Brickhouse on terms he found objectionable," and that Russell and Pease committed the above acts "to damage Brickhouse and tortiously interfere with its operation." *Id.* Brickhouse alleges that, as a result of such tortious acts, it has suffered monetary damages or losses, including "loss of income, loss of business opportunities, attorney's fees, and costs." *Id.* ¶ 31. The Court infers from such allegations that

---

[1] The letter did not identify which quarterly payment or payments, in particular, were untimely or past due. In their motion papers, Defendants assert that Brickhouse, in addition to making a late payment for the one due in March of 2023, wholly failed to make the next quarterly payment, which was purportedly due on June 1, 2023. Notably, however, Brickhouse's Amended Complaint does not allege that it failed to make a payment due on June 1, 2023.

at least some rents that would have been paid to and received by Brickhouse, were instead sent to and received by Level 7, or Mr. Russell acting on Level 7's behalf.

In their motion to dismiss, Mr. Russell and Pease essentially argue that Brickhouse's own pleading, together with incorporated documents, establish that none of Defendants' actions, even assuming they interfered with contractual relations and caused harm to Brickhouse, were "improper" for purposes Brickhouse's tort claim. Ordinarily, the analysis of such an issue "is guided by § 767 of the *Restatement (Second) of Torts* (1979), which directs [courts] to consider the motives and actions of [the defendant], the relations of the parties, and their respective interests." *Gifford*, 165 Vt. at 612. Here, however, Russell and Pease do not engage in any analysis of the Section 767 considerations. They argue that their actions were not wrongful or "improper," as a matter of law, given the following terms of the mortgage deed:

> If Mortgagor breaches or fails to perform any of the covenants and agreements contained in this Mortgage and in the event foreclosure proceedings are instituted under this Mortgage, then Mortgagee at its option, without notice or demand, may declare the entire indebtedness secured by this Mortgage to be immediately due and payable and Mortgagee at its option may do and pay for whatever it deems to be necessary to protect the value of the Property and Mortgagee's rights in the Property. Mortgagee's actions may include but are not limited to . . . the entry upon, taking possession of and management of the Property including the right to collect all rents due and to rent the Property with rents so collected applied first to payment of the costs of management, whether collections costs or repair costs or otherwise, and then to the indebtedness secured by this Mortgage[.]

Pl.'s Am. Compl., Ex. A. In short, because the parties freely bargained for and agreed in a valid contract that the mortgagee may take such remedial actions—including the collection of rents and possession of the subject property during the pendency of a foreclosure proceeding—an inquiry into the propriety of Defendants' actions in this case is answered by simple reference to this contractual provision itself.

But, by its very terms, the above provision has no application unless Brickhouse was actually in breach of a covenant of the mortgage deed. Indeed, in their motion papers, Defendants tacitly concede that if there was no breach of the mortgage deed or default under the promissory note, then the above mortgage deed provision does not apply and does not insulate Defendants from tort liability. *See* Defs.' Mem. of Law In Supp. of Mot. to Dismiss (filed Nov. 22, 2023), at 5 (arguing that Plaintiff's "right to relief" under Count II "is hinged upon the premise that the Plaintiff is not in default on the underlying note and mortgage"); *id.* at 7-8 ("To the extent the Plaintiff seeks relief from this court, the simple question for the court is whether [Plaintiff] is in default under the terms of the applicable mortgage and note.").

Of course, Defendants assert that there was such a breach, and that Brickhouse defaulted under the promissory note, as a result of Brickhouse's failure to make one or more quarterly mortgage payments when such payments were due. Yet Brickhouse's pleading does not admit facts that suffice to show any such missed payment or breach. As to the $12,500 payment due in March of 2023, Brickhouse admits that the payment was made several weeks late, but it also alleges that such payment was accepted by Level 7. Here, the Court infers that Level 7 accepted that late payment as full and complete satisfaction of Brickhouse's payment obligation that was due in March of 2023. After all, Mr. Russell did not send Brickhouse a demand and notice of intent to sell until June 20, 2023—nearly two months after the April

payment—and that communication did not indicate that the April payment had been rejected as untimely. Nor did the June demand/notice even reference any particular missed or late payment that constituted default under the note, or breach of a mortgage covenant.

As for the supposed missed payment that was purportedly due in June of 2023, facts showing that the payment was missed or was inexcusably late do not appear on the face of the Amended Complaint, or in any of the documents attached thereto and relied upon. Therefore, even if the Court were to accept Defendants' argument that Brickhouse admitted in its pleading that the mortgage payment schedule was not modified through a written instrument signed by the parties—and thus, was not modified in compliance with the Statute of Frauds—Brickhouse's claim still survives.

In any event, dismissal under Rule 12(b)(6) is improper here because Brickhouse's claim contains factual allegations indicating that Defendants' conduct may be considered "improper," and therefore prima facie actionable, even if Defendants were justified under the mortgage deed in interfering and causing the harm they allegedly caused. Under the *Restatement*, "[t]he nature of the actor's conduct is a *chief factor* in determining whether the conduct is improper or not, despite its harm to the other person … *The issue is not simply whether the actor is justified in causing the harm, but rather whether he is justified in causing it in the manner in which he does cause it.*" *Restatement (Second) of Torts* § 767, cmt. c (emphasis added); *see also id.* ("Fraudulent misrepresentations are . . . ordinarily a wrongful means of interference and make an interference improper."). In addition to the nature of the actor's conduct, the actor's motive is also pertinent:

> In determining whether the interference is improper, it may become very important to ascertain whether the actor was motivated, in whole or in part, by a desire to interfere with the other's contractual relations. If this was the sole motive the interference is almost certain to be held improper. A motive to injure another or to vent one's ill will on him serves no socially useful purpose.
>
> The desire to interfere with the other's contractual relations need not, however, be the sole motive. If it is the primary motive it may carry substantial weight in the balancing process and even if it is only a casual motive it may still be significant in some circumstances.

*Id.*, cmt. d.

Here, Brickhouse alleges that Defendants' letter to Brickhouse's residential tenants mistakenly (and "fraudulently") stated that the subject property had been conveyed to Level 7 at a non-judicial foreclosure sale held on September 22, 2023, and that Level 7 was now the tenants' "landlord" and "owner of the apartment you occupy." Am. Compl. ¶ 30 & Ex. E. Further, as noted above, Brickhouse alleges that Russell interfered with Brickhouse's contractual relations in order to "damage" Brickhouse, and to "make Ms. Currie pay" for having wrongfully taken advantage of Ms. Keyes. The Court infers from such allegations that Russell and Pease's interfering actions were at least not *primarily* motivated by interests in securing the property or securing Level 7's interests as mortgagee/lender.

In response, Defendants merely argue that if Brickhouse was in default and in breach of the mortgage deed, then all of Defendants' actions—even their inaccurate letter to Brickhouse's tenants—was justified and rightful, given the broad "self-help" rights afforded to the mortgagee under the mortgage deed. *See* Defs.' Mem. at 11 (even if Defendants' letter to tenants "is not accurate," that "does not negate the rights of Russell and/or Pease on behalf of Level 7 to enter the premises and collect rents" (citing

mortgage deed provision)). And Defendants do not even address the allegations of improper motives. Therefore, Defendants have not meaningfully addressed or reconciled, with reference to the *Restatement* principles quoted above or applicable case law, the implications of allegations regarding the nature of Defendants' interfering conduct, or their motives. Much less have Defendants established that, within the context of Rule 12(b)(6) motion that seeks dismissal of a tortious interference claim as a matter of law, the issues of Defendants' motive and manner of conduct are entirely subsumed or rendered irrelevant by the enforcement and/or security clause contained in the mortgage deed.

Accordingly, dismissal for failure to state a claim is improper.

D. <u>Plaintiff's Motion For Leave To File Second Amended Complaint.</u>

The Court will deny Plaintiff's motion for leave to amend its pleading, for a number of reasons. First, any re-worked claim for "injunctive relief" would be futile, for reasons stated above. Second, the claim for tortious interference with business relations has survived Defendant's Rule 12(b)(6) motion, so a curative amended pleading appears unnecessary. The Court had understood Plaintiff to be seeking leave to amend Counts I and II only in the event the Court granted dismissal of those claims as set forth in the Amended Complaint. Third, Plaintiff also seeks to file "an additional count for fraudulent inducement to contract against Defendant Level 7," (Mot. for Leave at 2), but claims of fraud must be pled with particularity, *see* V.R.C.P. 9(b), and Plaintiff has failed to even supply a draft of this proposed new claim for review and consideration by the parties or the court. Notably, Rule 15(a) of the Vermont Rules of Civil Procedure, which governs amendments to pleadings, is "virtually identical to Federal Rule 15," Reporter's Notes, V.R.C.P. 15, and a leading federal treatise states that:

> [a] motion to amend under Rule 15(a), as is true of motions generally, is subject to the requirements of Rule 7(b), and must set forth with particularity the relief or order requested and the grounds supporting the application. In order to satisfy these prerequisites a copy of the amendment should be submitted with the motion so that the court and the adverse party know the precise nature of the pleading changes being proposed.

6 Wright & Miller, et al., *Federal Practice & Procedure Civil* § 1485 (3d ed., June 2024 update) (citations omitted). Further, while leave to amend shall be liberally granted when justice requires, one of the principal reasons for liberal amendment is "to give notice of the nature of the claim…" *LeClair v. LeClaire,* 2017 VT 34, ¶ 27 (quoting *Bevins v. King,* 143 Vt. 252, 255 (1983)). Plaintiff's failure to set forth with particularity its proposed new claim and the grounds therefore—a claim which itself must be pled with particularity–warrants denial of the motion.

<u>Conclusion</u>

The motion to dismiss Counts I and II of the Amended Complaint, filed November 22, 2023, by Defendants Russell and Pease, is granted as to Count I and denied as to Count II. Plaintiff's motion for leave to file a second amended complaint, filed July 26, 2024, is denied.

Electronically signed on January 9, 2025 pursuant to V.R.E.F. 9(d)

Alexander N. Burke
Superior Court Judge